```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA

MARGARET MOTHE                              CIVIL ACTION

VERSUS                                      NO: 10-2008

MOTHE LIFE INSURANCE COMPANY                SECTION: "B"(4)
```

                            ORDER AND REASONS

Before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Rec. Doc. No. 7). Plaintiff has filed a Memorandum in Opposition thereto at Rec. Doc. No. 8, and Defendant has filed a reply to Plaintiff's opposition at Rec. Doc. No. 11.

For the following reasons, **IT IS ORDERED** that Defendant's Motion to Dismiss (Rec. Doc. No. 6) pursuant to F.R.C.P. 12(b)(6) is converted to a Motion for Summary Judgment under F.R.C.P. 56 as matters outside the pleadings are presented, and that Defendant's Motion for Summary Judgment is **DENIED.**

A. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*,477 U.S. 317, 327 (1986). A genuine issue exists if the

evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248,(1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993). Finally "[w]hen matters outside the pleadings are considered, a motion for dismissal based on failure to state a claim is converted into a motion for summary judgment . . . ." *Roque v. Jazz Casino Co. LLC*, 2010 WL 2930876, at *2 (5th Cir. Jul. 22, 2010) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 283 n.7 (5th Cir.1993).

The Fifth Circuit has consistently stated that a court "may consider documents on a motion to dismiss without converting that motion into one for summary judgment where the documents are central to the plaintiffs' claims and are referred to in the complaint." *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 791 (E.D. La. 2009) (citing *In Re Katrina Canal Breaches Lit.*,

495 F.3d 191, 205 (5th Cir.2007) (considering insurance contracts on a motion to dismiss); *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 290 (affirming dismissal of defendant under 12(b)(6) based on consideration of documents that explained the legal relationship between the defendants); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir.2000) (approving consideration of documents attached to motion to dismiss noting that "[i]n so attaching, the defendant merely assists . . . the court in making the elementary determination of whether a claim has been stated.").

Although Plaintiff did not attach the Agreement to the Complaint, the Court can consider it in addressing Defendant's Rule 12(b)(6) motion to dismiss, because it is central to Plaintiff's claims and is frequently referenced in the Complaint.  (See Rec. Doc. No. 1).  However, the board resolution is not central to Plaintiff's claims; on the contrary, the board resolution is central to Defendant's defense as to why it failed to pay amounts allegedly due to Plaintiff under the Agreement.  Moreover, Plaintiff does not reference the board resolution in her Complaint. Because the board resolution is beyond the pleadings for purposes of a Rule 12(b)(6) motion, this Court converts Defendant's motion to a Rule 56 Motion for Summary Judgment.

B.   Applicability of ERISA to the Agreement

"ERISA applies to any employee benefit plan if it is established or maintained by an employer or an employee organization engaged in commerce or in any industry or activity affecting commerce." *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240 (5th Cir. 1990) (citing 29 U.S.C. § 1003(a)). The Act regulates certain pension and welfare plans that are offered to employees. *Id.*

Whether an ERISA plan exists is a question of fact. *Clancy v. Employers Health Ins. Co.*, 82 F.Supp. 2d 589, 593 (E.D. La. 1999)(citing *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 235 (5th Cir. 1995). The Fifth Circuit uses a three-prong test to determine whether an employee benefit arrangement constitutes an ERISA plan. *Shearer v. Southwest Service Life Ins. Co.*, 516 F.3d 276 (5th Cir. 2008). To constitute an ERISA plan, the arrangement must be: (1) a plan; (2) not excluded from ERISA coverage by safe-harbor provisions established by Department of Labor; and (3) established or maintained by employer with intent to benefit employees. *Id.* (citations omitted). "If any part of the inquiry is answered in the negative, the submission is not an ERISA plan." *Peace v. Am. Gen. Life Ins. Co.*, 462 F.3d 437, 439 (5th Cir. 2006)(citation omitted). As the instant agreement fails to satisfy the first requirement of the Fifth Circuit's requirements, the Court need not address the issue of whether the plan satiates

the remaining elements.

"The Fifth Circuit has adopted the Eleventh Circuit's holding in *Donovan v. Dillingham*, by which an ERISA plan is established 'if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.'" *Harvey v. Louisiana Health Serv. & Indem. Co.*, 2010 U.S. Dist. LEXIS 120912 at *4-5 (E.D. La. 2010). "A formal document designated as 'The Plan' is not required to establish that an ERISA plan exists; otherwise, employers could avoid federal regulation merely by failing to memorialize their employee benefit programs in a separate document so designated." *Vega v. Nat'l Life Ins. Servs.*, 145 F.3d 673, 677 (5th Cir. 1998) (citing *Mem'l Hos. Sys. v. Northbrook Life Ins. Co.* 904 F.2d 236, 241 (5th Cir. 1990)).

The Agreement in question clearly describes the intended benefits and class of intended beneficiaries. (Rec. Doc. No. 7-1 pg. 15). The Agreement provides for the payment of a post-retirement income to Emile Mothe, or pre-retirement death benefits to his designated beneficiary. Furthermore, the Agreement indicates the source of financing for the benefits, noting that Defendant will pay $9000 per month for 120 months to Emile following his retirement, or to Emile's designated beneficiary following his death.

Nevertheless, the Agreement in question lacks clear procedures

5

for receiving the benefits.  Several district courts in the Fifth Circuit have found that a reasonable person can ascertain the procedures for receiving benefits where such procedures are clearly defined in provisions of the contract or supplemental material.[1]

A reasonable person cannot ascertain the procedures for receiving benefits under the Agreement in question.  The Agreement does not contain a procedure for obtaining post-retirement income, nor is the information provided in a supplemental document presented in the record before this Court.[2]  Furthermore, although

---

[1] *Clancy v. Employers Health Ins. Co.*, 82 F.Supp. 2d 589, 594 (E.D. La. 1999)("[T]he procedures for recovering the benefits are explained in the materials given to the employees."); *Washington v. Elec. Data Sys.Corp.*, 2003 U.S. Dist. LEXIS 4238 at *7 (E.D. Tex. 2003)("[T]he 'Administration and Claims' section details the procedures followed."); *Wright v. Anthem Life Ins. Co. of Indiana*, 2000 U.S. Dist. LEXIS 8899 at * 14 (N.D. Miss. 2003)("[T]he procedure for receiving benefits is the submission of claims to the group insurer...); *Timmons v. Special Ins. Servs.*, 984 F. Supp. 997, (E.D. Tex. 1997) ("[T]he procedures for receiving such benefits, including the procedure for appealing a decision made on a claim, were also described in the Plan booklet...); *Alsup v. Unun Provident Corp.*, 2009 U.S. Dist. LEXIS 1159 at * 13 (W.D. La. 2009)("The procedure for receiving benefits are clearly defined in the policies provided and could be deciphered by a reasonable person."); *Tigner v. Lea C. Paslay Ins., Inc.*,575 F. Supp. 2d 766, 771 (N.D. Miss 2008) ("[A] quick review of the critical illness insurance policy reveals a section entitled 'How to File a Claim' followed by 'Payment of Claims.'); *Aucoin v. Regions Fin. Corp.*, 2010 U.S. Dist. LEXIS 5221 at *10 (E.D. La. 2010)("[P]lan...sets out procedures for obtaining benefits in a section titled "ERISA Provision." ).

[2] Procedures may exist for receiving retirement benefits aside from simply retiring. *See Chero-Key Piping Co. v. Great West Life & Annuity Ins. Co.*, 646 F. Supp. 2d 853, 859 (S.D. Tex. 2009) ("The procedures for receiving distributions...at retirement...are set forth in Section XI."); *Holdbrook v.*

the Agreement indicates a procedure by which Emile Mothe can identify a designated beneficiary to receive the death benefits, neither the Agreement nor any supplemental document presented in the record indicates the procedure for obtaining benefits after an individual has been named as a beneficiary. Moreover, the Agreement does not set forth a procedure for review or appeal of a denied claim. Based on the foregoing analysis, no ERISA plan existed.

C. Dissolution Claims Under State Law

Defendant alternatively argues that, should the Court find ERISA inapplicable, Plaintiff cannot maintain a contract claim under Louisiana state law because the Company and Emile Mothe mutually resolved to dissolve the Agreement effective September 3, 2002. (Rec. Doc. No. 7-1 pgs. 11-12). This alleged dissolution is evidenced by a board resolution purportedly signed by Emile Mothe on September 3, 2002. (See Rec. Doc. No. 7-1 pg. 16).

A genuine issue of material fact exists as to whether the Agreement between Mothe Life and Emile was dissolved by mutual consent.[3] Defendant contends that Mothe Life and Emile mutually

---

*California Fed. Bank*, 905 F. Supp. 367, 370 (N.D. Tex. 1995) ("[T]he intended benefits were monthly income after retirement...and the procedures for receiving the benefits were governed by Section VIII of the 75-page plan.").

[3]Although the Agreement contains provisions explaining how the Agreement can be dissolved, none of those provisions apply in the instant case. Specifically, the Agreement provides that Mothe

dissolved the Agreement, and that Emile is bound by his signature to the board resolution, irrespective of whether Emile attended the board meeting, and regardless of whether Emile signed the resolution in his capacity as Mothe Life's Secretary-Treasurer. (See Rec. Doc. No. 7-1 pg. 16)(Rec. Doc. No. 11 pgs. 7 & 8).

On the contrary, Plaintiff asserts that Defendant, through its Board of Directors, unilaterally resolved to terminate the Agreement. (Rec. Doc. No. 8 pg. 12). Plaintiff contends that Emile "clearly was not present, did not participate or vote in favor of or otherwise endorse the action taken by the Board." (Rec. Doc. No. 8 pg. 12). Plaintiff asserts that Emile later signed the resolution; however, Plaintiff contends that Emile's purported signature was made "exclusively in his capacity as 'Secretary-Treasurer." (Rec. Doc. No. 8 pg. 12). As Secretary, Plaintiff contends that it was Emile's "corporate duty to accurately reflect the actions taken by the Board regardless of his personal view as to the propriety of said action." (Rec. Doc. No. 8 p. 12). Thus, Plaintiff argues that Emile did not personally consent to or intend to terminate the Agreement. By purportedly signing the board

---

Life can terminate the Agreement "[i]f Emile terminates his employment with Mothe under conditions other than those set forth in paragraphs 1 [retirement], 2 [death subsequent to retirement], or 3 [death while still employed by Mothe], or otherwise does not fulfill all his obligations under this agreement." (Rec. Doc. No. 7-1 pg. 15 ¶ 4). The Agreement further provides that Mothe Life can terminate the Agreement if Emile violates the non-compete clause enumerated in ¶ 5 of the Agreement. (Rec. Doc. No. 7-1 pg. 15 ¶ 5)).

resolution, Plaintiff contends that Emile was merely "accurately and properly discharging the duties of his office" by reflecting the action of the Board.  (Rec. Doc. No. 8 pg. 13).

Furthermore, Plaintiff alleges in her Complaint that in the January 27, 2004 minutes of a board meeting of Mothe Life, the Board agreed to make payments on the contract in the amount of $9000 per month for the year 2004.  (Rec. Doc. No. 1 pg. 2). Plaintiff alleges (and Defendant admits) that Defendant paid Plaintiff $9000 per month in 2004 and 2005, and for three months in 2006. (Rec. Doc. No. 1 pgs. 2-3) (Rec. Doc. No. 7-1 pg. 3).  While Plaintiff argues that she was entitled to such payments pursuant to the Agreement, Defendant argues that these payments were gratuity payments, as it was under no legal or contractual obligation to make such payments given that the Agreement had been mutually dissolved.

As there exists a genuine issue of material fact as to whether the Agreement was dissolved by mutual consent, Defendant's motion for summary judgment is denied.

New Orleans, Louisiana this 23rd day of March, 2011.

UNITED STATES DISTRICT JUDGE